Town of Tisbury *vs.* Mildred C. Hutchinson & others.

Dukes County.    January 7, 1959. — February 5, 1959.

Present: Wilkins, C.J., Ronan, Spalding, Whittemore, & Cutter, JJ.

*Old Age Assistance. Public Welfare. Lien,* For old age assistance. *Real Property,* Lien. *Executor and Administrator,* Real estate of decedent. *Equity Jurisdiction,* Laches, Lien. *Laches. Constitutional Law,* Old age assistance, Due process of law.

In a suit in equity by a municipality to enforce a lien under G. L. c. 118A, § 4, as amended through St. 1951, c. 801, § 4, upon real estate owned by a recipient of old age assistance at the time of his death intestate and then in excess of $1,500 in value, there was no error in a decree ordering that the property be sold at public auction, that the first $1,500 of the proceeds of the sale be set aside and real estate taxes accrued on the property after the recipient's death, with interest, be paid therefrom and the balance thereof be distributed among the recipient's heirs, and that from the proceeds of the sale in excess of $1,500 the costs of sale be paid first and then the amount of assistance furnished be paid to the municipality and the surplus, if any, be paid to the recipient's heirs.  [515–516]

A municipal lien under G. L. c. 118A, § 4, as amended through St. 1951, c. 801, § 4, existing on real estate of a recipient of old age assistance at the time of his death is superior to any right of his personal representative under G. L. c. 202 to sell the real estate for the payment of the recipient's debts or the expenses of administering his estate.  [516]

Laches on the part of a municipality in enforcing a lien on real estate under G. L. c. 118A, § 4, as amended through St. 1951, c. 801, § 4, for old age assistance furnished to the owner thereof is no bar to maintenance of a suit in equity to enforce the lien.  [516]

A decree ordering a sale of real estate at public auction by a commissioner was within the discretion of the judge in a suit in equity by a municipality under G. L. c. 118A, § 4, as amended through St. 1951, c. 801, § 4, to enforce a lien upon the real estate for old age assistance furnished to the owner thereof.  [517]

G. L. c. 118A, § 4, in the amended form appearing in St. 1951, c. 801, § 4, providing for liens upon real estate of recipients of old age assistance as a means of securing reimbursement of the municipalities for assistance furnished after the effective date of the amendment is not unconstitutional as applied to the recipients or to persons claiming under them after their deaths.  [517]

Bill in equity, filed in the Superior Court on June 25, 1956.

The suit was heard by *Kirk*, J.

*M. Martin Gouldey*, for the defendants.

No argument nor brief for the plaintiff.

CUTTER, J. This is a bill in equity filed June 25, 1956, by the town against the administratrix of the estate of one Chadwick and against all persons interested in his estate to enforce a lien (for old age assistance furnished to Chadwick) against real estate in Tisbury owned by him at his death on May 20, 1953, and also on January 23, 1952, when a certificate of lien under G. L. c. 118A, § 4 (as amended through St. 1951, c. 801, § 4),[1] was recorded in the registry of deeds. Upon Chadwick's application, the town granted to him old age assistance in the amount of $1,638.50. After Chadwick's death, real estate taxes accrued in the sum of $587.42, and the real estate depreciated in value. The facts, except the value of the real estate, have been agreed. The judge found this value to be not less than $2,500 at the date of his finding (June 20, 1957) and somewhat more at the date of Chadwick's death. A final decree was entered (1) declaring that the defendants were indebted to the town for $1,638.50 for old age assistance and for $620.68 for taxes and interest; (2) ordering the real estate sold at public auction; and (3) directing distribution of the proceeds in the following manner. From the proceeds, the sum of $1,500 (the amount mentioned in § 4; see footnote 1, *supra*) was to be set aside.

---

[1] Section 4 (which by St. 1951, c. 801, § 7, became effective in its amended form as of January 1, 1952) as so amended reads in part as follows: "The ownership . . . of an interest in real estate by an applicant . . . shall not disqualify him from receiving [old age] assistance . . . provided, however, that the town shall take a lien on such property as a condition of granting old age assistance . . . . The town shall place on record in the proper registry of deeds . . . an instrument . . . creating a lien upon such real estate for the amount of assistance paid by it, including amounts paid subsequently to the recording of the lien, which lien shall be prior to any lien thereafter recorded . . . . Such lien shall be enforceable by a bill in equity . . . . It shall be the duty of the board of public welfare of the town to take action upon the death of the recipient . . . to enforce any such lien . . . . *No lien shall be enforced* under this section when the combined value of the recipient's interest in real estate *at the time of his decease*, based on fair market value, together with the amount of cash surrender value in life insurance exempted under section five, amounts in the aggregate to fifteen hundred dollars or less. When said aggregate value of real estate and cash surrender value in life insurance exceeds fifteen hundred dollars, the amount in excess of fifteen hundred dollars shall be recoverable under the lien, but in no event shall said recovery exceed the total amount of assistance paid . . ." (emphasis supplied).

Out of this $1,500 the real estate taxes and interest were to be paid to the town and the balance of the $1,500 was to be distributed among Chadwick's heirs at law. From the proceeds in excess of $1,500 were to be paid the costs of sale, and then the amount of $1,638.50 to the town in satisfaction of its lien. The surplus, if any, was to be distributed among Chadwick's heirs. The defendants appealed. Their contentions are discussed below.

1. Section 4, as amended in 1951,[2] has not been construed by this court in the respects here relevant. Cf. *Weaver* v. *New Bedford*, 335 Mass. 644, and *Henderson* v. *Yarmouth*, 335 Mass. 647. Under § 4 whether a lien for old age assistance may be enforced after a recipient's death depends on whether the fair market value of the recipient's real estate and the cash surrender value of the recipient's life insurance "at the time of his decease" exceed $1,500. The town, asserting the lien for old age assistance under § 4, in order to satisfy that lien may not have recourse to the first $1,500 of value of the real estate and insurance. No provision of § 4, however, bars the town from asserting its lien for taxes (G. L. c. 60, § 37, as amended through St. 1943, c. 478, § 1) against that first $1,500 of value. The trial judge properly ordered the amount of the taxes accruing after the death of Chadwick to be deducted from the first $1,500 of proceeds of the sale. Similarly, the lien of the town for old age assistance is not subordinated by anything in § 4 to the expenses of administering the estate of a deceased recipient of assistance. The right to sell real estate to pay debts and expenses given by G. L. c. 202, §§ 1, 2, 14 (as amended), is subject to liens existing at the time of the recipient's death. See *Tyndale* v. *Stanwood*, 182 Mass. 534, 536; Newhall, Settlement of Estates (4th ed.) § 119, at pp. 358–359.

2. The town is not barred by laches in enforcing its lien. *Sears* v. *Treasurer & Receiver Gen.* 327 Mass. 310, 326.

---

[2] Section 4 has been further amended in respects not here relevant. St. 1956, c. 637; St. 1957, c. 304. *Dartmouth* v. *Paull*, 329 Mass. 22, and *Dennis* v. *Cook*, 334 Mass. 308, dealt with § 4 as it appeared prior to the 1951 amendment.

3. The defendants' objections to so much of the decree as orders sale at public auction by a commissioner is without merit. Public auction is a reasonable method of judicial sale to enforce a lien where equitable enforcement of the lien is expressly authorized as under § 4. See *National Radiator Corp.* v. *Parad*, 297 Mass. 314, 319–320; Pomeroy, Equity Jurisprudence (5th ed.) §§ 171 (4), 1228, 1268. See also *Wilson* v. *Martin-Wilson Automatic Fire Alarm Co.* 151 Mass. 515, 517–519; *Eastern Bridge & Structural Co.* v. *Worcester Auditorium Co.* 216 Mass. 426, 428–431; *Seder* v. *Kozlowski*, 311 Mass. 30, 32–33. We need not consider upon what terms and to what extent in the judge's discretion the commissioner could have been authorized to sell at private sale. Cf. G. L. c. 202, § 14 (as amended through St. 1934, c. 157, § 1); c. 241, § 31. In any event there has not been shown any abuse of discretion in ordering sale at public auction.

4. The defendants contend that § 4 as amended in 1951 is unconstitutional, even though it operated only prospectively.[3] They have advanced no reason which leads us to doubt that the Commonwealth may provide that old age assistance shall be furnished to persons applying for it under reasonable, nondiscriminatory terms and conditions calling for reimbursement from available resources of the recipient or his estate. Chadwick accepted assistance after the effective date of the 1951 amendment. There is nothing inequitable or unreasonable in holding him, and those claiming under him, to be bound by the provisions of the amendment relating to reimbursement. See *Boston* v. *McCafferty*, 328 Mass. 177; note, 29 A. L. R. 2d 731, 733. In such matters there is a wide legislative discretion. See *Howes Bros. Co.* v. *Unemployment Compensation Commn.* 296 Mass. 275, 283–286, cert. den. 300 U. S. 657. Cf. *Carmichael* v. *Southern Coal & Coke Co.* 301 U. S. 495, 515–521.

*Decree affirmed.*

---

[3] See St. 1951, c. 801, § 4A.